UNITED STATES *v.* SHEEP SHEARERS MDSE. & COMM. CO. (No. 3897)[1]

---

[1] T. D. 48009.

United States Court of Customs and Patent Appeals, November 4, 1935

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *John F. Kavanagh*, special attorney, of counsel), for the United States.
*James W. Bevans* for appellee.

[Oral argument October 9, 1935, by Mr. Lawrence and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

During the life of the Tariff Act of 1922 there were eleven importations, through the port of New York, of so-called combs and cutters for sheep clipping machines, and one importation during the life of the Tariff Act of 1930, which are here under consideration. The Collector of Customs classified the merchandise involved in the entries made under the Tariff Act of 1922 as dutiable under paragraph 357 of said act, and the merchandise involved in the one entry made during the life of the Tariff Act of 1930 as dutiable under paragraph 357 of that act.

The importer protested the collector's action as to each of the above entries, claiming that the merchandise imported under the Tariff Act of 1922 was free of duty under paragraph 1504 thereof, and that the merchandise imported under the Tariff Act of 1930 was free of duty under paragraph 1604 thereof. It is obvious that the trial court in its consideration of the case, which embraced the twelve consolidated protests, and in rendering its judgment which is here appealed from by the United States, overlooked the fact that one of the entries involved was made during the life of the Tariff Act of 1930. The judgment appealed from affects only the articles "which were assessed with duty under paragraph 357 of the Tariff Act of 1922", although in the schedule of protests accompanying the judgment protest No. 540836–G/51849 (relating to the entry made in 1931) was included.

The merchandise is identical with that which was involved in this court's decision in *United States* v. *Sheepshearers Mdse. & Comm. Co.*, 20 C. C. P. A. (Customs) 327, T. D. 46112, and in that case the merchandise was fully described as follows:

Samples are on file as exhibits in the case. These comprise two separate articles, one referred to as a comb and the other as a cutter. They are for use in what is generally referred to as a sheepshearing machine, the machine being a device for the operation of which power is usually supplied by either electricity through the medium of a motor, or by a gasoline engine through the medium of a belt. By proper gearing the power for operation can be produced and transmitted by the turning of a crank by hand. The complete machines for operation in the last-named manner are probably of smaller dimensions than those made for operation by electric or belt power. The combs and cutters at issue are for the larger type of machine.

There is no question made as to these being parts for a device which is used for shearing sheep and not used for clipping other animals. In other words, the exclusive use of the articles whose classification is in issue is for shearing sheep.

The piece referred to as a comb consists of a metal plate about 3½ by 2½ inches over all, and one-eighth inch thick, having a series of points or teeth—13 in number—sloping from base to outer end, and spaced at the outer end about one-fourth inch apart. The cutter is a metal part having four teeth, spaced about three-fourths inch apart at their outer ends. Over all, it is about 3½ by 1½ inches, hollowed on the under side and slightly curved at its base.

In operation the comb is rigidly attached by screw bolts to the end of a device which seems to be designated as a hand piece, or "shearing hand piece," and the cutter is attached by means of another device in a manner which leaves it free to slide back and forth, or oscillate, across the stationary comb when power is applied and thus shear the fleece from the sheep.   *   *   *

The paragraphs of the Tariff Act of 1922 which call for consideration here are as follows:

PAR. 357. Nail, barbers', and *animal clippers*, pruning and sheep shears, and all scissors and other shears, *and blades for the same*, finished or unfinished, valued at not more than 50 cents per dozen, 3½ cents each and 45 per centum ad valorem; valued at more than 50 cents and not more than $1.75 per dozen, 15 cents each and 45 per centum ad valorem; valued at more than $1.75 per dozen, 20 cents each and 45 per centum ad valorem: *Provided*, That all articles specified in this paragraph, when imported, shall have die sunk conspicuously and indelibly, the name of the maker or purchaser and beneath the same the name of the country of origin, to be placed on the outside of the blade, between the screw or rivet and the handle of scissors and shears (except pruning and sheep shears), and on the blade or handle of pruning and sheep shears and clippers. (Italics ours except *Provided*.)

PAR. 1504. Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, threshing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, *and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: Provided, That no article specified by name in Title I shall be free of duty under this paragraph.* (Italics ours except *Provided*.)

In the Tariff Act of 1930, paragraph 357 is identical with paragraph 357 of the Tariff Act of 1922, and paragraph 1604 is identical with paragraph 1504 of the Tariff Act of 1922.

It is the claim of the Government that although the imported articles are parts of agricultural implements, they are excluded from the agricultural free list paragraph by virtue of the proviso therein which requires that if the articles are specified by name in Title I, they shall not be free of duty, and that the imported merchandise constitutes blades for animal clippers, and, therefore, is dutiable under said paragraph 357.

The importer contends, and the trial court held, that the articles were not blades for animal clippers and were not named in said dutiable paragraph. This contention and holding involves the sole question presented for our decision.

A portion of the record and certain of the exhibits which were before this court in the *Sheepshearers Mdse. & Comm. Co.* case, *supra*, were admitted in evidence. The examiner was put on the witness stand to show that the merchandise in the case at bar was identical with that involved in this court's said former decision. The exhibit representing the merchandise at bar in our former decision was also introduced in this case and is before us. The importer also introduced the testimony of two other witnesses, both of whom testified in the former case. Importer's counsel states that by reason of comments made by this court in that case with reference to the insufficiency of the commercial proof, the witnesses were put on the stand to amplify the testimony formerly given and to supply certain shortcomings in the record of the former case to which this court alluded.

Appellee's counsel contends that he has shown by the record that the articles involved—

have always been designated in the trade as "combs and cutters"; and in animal clipping machines, as clipping plates, that is, the top plate and the bottom plate.

In this court, counsel for the importer was asked if the common meaning and the commercial or trade meaning of the term "blades" were the same, and he stated that they were, but that he had proved the meaning which the trade gave to the article at bar, and urged that the record established that the involved merchandise was known in the trade as combs and cutters.

We discussed most of this testimony at great length in the former case, and it is not necessary to repeat here much of what was said there. However, after careful examination of the new record we are unable to find that the weak features of the testimony pointed out in the prior decision are to any great extent strengthened.

In the former case a great many catalogues were introduced in evidence, in which the seller, in this country, of certain upper blades or cutting knives for sheepshearing machines and clippers designated them as "cutters", and in which the base or bottom portions, with cutting edges, were designated as "combs". In one of the catalogues was the statement that the manufacturer made at least 80 per centum of the world's clippers and shearing machinery. This was strongly relied upon in the former case as showing the scope throughout the United States of the trade understanding argued for. We pointed out in the former case that this character of testimony could not be relied upon as proof of the facts asserted. In the instant record, appellee has produced the testimony of one Michael W. McArdle, a witness in the former trial, in an effort to prove the truth of the above-referred-to statement contained in the catalogue. The witness stated that neither he nor anyone in his company knew whether the said statement in the catalogue was true or false and that it was inherited from his company's predecessor. The catalogue was issued in 1928, and appellee's attorney at the trial stated that it was offered in evidence for the purpose of proving common meaning. The effect of this character of evidence is commented on at great length by appellee's counsel and considerable consideration was given to it by the trial court.

We are of the opinion that if this catalogue, and other catalogues introduced, referred to the articles at bar as "combs" and "cutters", on and prior to the enactment of the Tariff Act of 1922, and that these catalogues were thoroughly circulated throughout the United States, this fact, though competent, could not constitute satisfactory proof of commercial designation, because, for one reason, it appears in this record that the trade did not uniformly accept such terms and continued to designate the articles by other names. It surely cannot be logically contended that a dealer in a given kind of merchandise can successfully control a tariff classification of imported merchandise by using certain language in cataloguing the same. Of course, proper catalogue designations ofttimes are helpful in arriving at the trade understanding, but they are never conclusive proof of the facts asserted.

Moreover, it is our view that under the circumstances of this case, it would make no difference in the final result if appellee's proof was as strong as he claims it to be. This and other courts have frequently said that in the interpretation of statutes, commercial designation is a rule of construction—an implement used by the courts in trying to arrive at legislative intent, and like all rules of construction is not controlling if other considerations are more persuasive of a different intent. *United States* v. *Stone & Downer Co.*, 274 U. S. 225; *United*

*States* v. *Stone & Downer Co. et al.*, 16 Ct. Cust. Appls. 82, T. D. 42732.

In the *Sheepshearers Mdse. & Comm. Co.* case, *supra,* this court quoted dictionary definitions of the term "blades" and held definitely that the imported articles responded to that term in the common understanding. It also held that the articles at bar were parts of animal clippers, since it was conceded that they were used for clipping sheep. When importer's counsel admitted in this court that the commercial meaning and the common meaning of the term "blades" were the same, it would seem that the controversy was ended unless appellee's proof in the new record, and other considerations brought to our attention, would warrant us in reversing our holding in the former case. We are certain that upon this record the decision in that case, under the doctrine of *stare decisis,* controls the decision of the issue involved here.

We have examined the record and find that appellant has not proved a commercial meaning of the term "blades" different from the common meaning of the same. Since it must be held that the commercial meaning and the common meaning are the same, and the court having declared what the common meaning is, we think the principle that common meaning will be adhered to until a legislative change in the statute necessitates a change in meaning is applicable. This principle is announced in the following cases: *United States* v. *Ben Felsenthal & Co. et al.,* 16 Ct. Cust. Appls. 15, T. D. 42713, and cases cited; *United States* v. *North American Mercantile Co.,* 17 C. C. P. A. (Customs) 378, 381, T. D. 43820; *United States* v. *Pacific Butchers Supply Co.,* 22 C. C. P. A. (Customs) 355, T. D. 47377.

Notwithstanding the many different contentions made by appellee's counsel, this seems to us to be a case where appellee and the trial court very strongly felt that this court had made an error in ascertaining the common meaning of the term "blades" and that the instant appeal was an attempt, upon a somewhat amplified record, to have the former decision overruled. Appellee is correct in the statement that it is usually proper for a court to reverse its decisions and to arrive at a different conclusion, if upon a new trial of the issue it is convinced that its former decision was erroneous. We are not so convinced. On the contrary, upon further reflection we feel more certain than formerly about the correctness of our former holding that when Congress used the term "blades" in paragraph 357 of the two acts involved it intended it to apply to parts of animal clippers such as are involved in this controversy.

We are further confirmed in the soundness of our former conclusion and our conclusion herein reached by the consideration of a matter which was evidently overlooked by the trial court. As far as we

know, the matter to which we shall presently allude was not mentioned by counsel on either side in the lower court or here until from the bench it was called to the attention of counsel when the case at bar was argued here.

The proviso in paragraph 357 of both acts is as follows:

*Provided,* That all articles specified in this paragraph, when imported, shall have die sunk conspicuously and indelibly, the name of the maker or purchaser and beneath the same the name of the country of origin, to be placed on the outside of the blade, between the screw or rivet and the handle of scissors and shears (except pruning and sheep shears), and on the blade or handle of pruning and sheep shears and clippers.

Congress there referred to the blades of clippers. Whether it had reference to the marking of a complete machine or of the blades for the same is not a matter of concern here. It did not designate the cutting element as "cutters" or "combs" or by any other term than "blades". It seems clear to us that since Congress denominated a so-called cutter of an animal clipper as a blade in the same paragraph where it provided for animal clippers and blades, it is proper in interpreting the statute to give this consideration great, if not controlling, weight, and it is a matter worthy of comment, although not of vast importance, that the imported blade which is involved in this suit, marked "Exhibit No. 1" is stamped in accordance with the requirement of the above proviso.

To hold that Congress intended that the cutting parts of power operated machine clippers used for shearing sheep are entitled to free entry and that hand operated shears for similar use should be dutiable would be anomalous. Appellee argues that if an absurdity should result from such a holding, this fact should not be controlling, and cites the so-called "flouncing" case, *United States* v. *Smith & Co.,* 12 Ct. Cust. Appls. 384, T. D. 40544. But, it is well settled that the courts try to avoid a construction that will result in such an anomaly as is pointed out here and that they do so avoid it if the language used will reasonably permit. *United States* v. *J. M. Lehman & Co., Inc.,* 22 C. C. P. A. (Customs) 106, T. D. 47081; *International Forwarding Co.* v. *United States,* 16 Ct. Cust. Appls. 539, T. D. 43264. We think our conclusion herein brings about a result free from anomaly and that the result is "reasonably borne out by the language used", in the dutiable provision here under consideration. *United States* v. *Stone & Downer Co.,* 274 U. S. 225.

It is our view, for the reasons stated, that each of the protests, including the protest lodged against the merchandise which was assessed with duty under paragraph 357, Tariff Act of 1930, should have been overruled, and that the classification of the collector was proper. The judgment of the United States Customs Court is *reversed.* In view of the fact that the judgment of the trial court only purports, as above set out, to direct the classification of the articles

involved "which were assessed with duty under paragraph 357, Tariff Act of 1922", the cause is *remanded* for further proceedings in accordance with the views herein expressed.